**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

MICHAEL BRUBAKER,

        Plaintiff,

v.

SRE CAPITAL, LLC; GRANT BRUNNER;
and GREGORY BRUNNER,

        Defendants.

Case No.: 1:23-cv-02544

**COMPLAINT**

Plaintiff Michael Brubaker ("Mr. Brubaker" or "Plaintiff") files this Complaint and demand against Defendants SRE Capital, LLC ("SRE Capital"), Grant Brunner, and Gregory "Greg" Brunner (collectively, "Defendants"), and hereby states and alleges as follows:

**PARTIES**

1.      Mr. Brubaker is an individual domiciled in Milton, Georgia.

2.      SRE Capital is a Colorado limited liability company with its principal place of business in Greenwood Village, Colorado.  Upon information and belief, SRE Capital's limited liability company members are domiciled in Colorado.

3.      Grant Brunner is an individual that  is domiciled in Colorado.

4.      Greg Brunner is an individual that is domiciled in Colorado.

**JURISDICTION AND VENUE**

5.      This Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6.      This Court has personal jurisdiction over Defendants because Defendants are domiciled in Colorado and specifically in this district.

4887-5627-2000.3

7.      Venue is proper in this district because, upon information and belief, all Defendants are residents of the State in which this district resides.  Venue is further proper because a substantial part of the events giving rise to the claim occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## FACTUAL BACKGROUND

8.      On or about May 26, 2022, Mr. Brubaker provided $200,000 of funding to SRE Capital pursuant to the terms of a Promissory Note dated May 26, 2022 ("First Promissory Note"). A true and correct copy of the First Promissory Note is attached hereto and incorporated herein as **Exhibit 1**.

9.      The indebtedness owed by SRE Capital under the First Promissory Note accrued interest at a rate of ten percent (10%), and $220,000 (principal plus interest) was due on or before July 15, 2022.  (*See* Ex. 1 at 1)

10.     If the indebtedness was not paid by July 15, 2022, Mr. Brubaker was entitled to an additional five percent (5%) interest.  The First Promissory Note required a sum of $230,000 to be paid by August 15, 2022.  (*Id.*)

11.     The First Promissory Note was secured by a Deed of Trust dated May 26, 2022, which granted Mr. Brubaker the rights described therein on an SRE Capital investment property located in the County of El Paso, State of Colorado: LOT 6 OAK MOUNTAIN ESTATES known as No. 2780 Rocky Heights Drive, Colorado Springs, Colorado 80921 (the "Rocky Heights Property.").  (*Id.*)

12.     Mr. Brubaker understood from representations made by SRE Capital, and specifically Mr. Grant Brunner, that the funds he loaned pursuant to the First Promissory Note would be used to invest in the Rocky Heights Property.

2

13.     The First Promissory Note was also guaranteed by a personal Guaranty signed by Grant Brunner and Gregory Brunner ("Guarantors").   A true and correct copy of the Personal Guaranty is attached hereto and incorporated herein as **Exhibit 2**.

14.     Pursuant to the terms of the Guaranty, Grant Brunner and Gregory Brunner jointly, severally, and unconditionally guaranteed to Mr. Brubaker the full and punctual payment of any scheduled payments of principal under the First Promissory Note.  (*See* Ex. 2 at 1)

15.     The Guaranty further provides that if SRE Capital defaulted, the Guarantors would keep, perform and observe the obligations of SRE Capital.  (*Id.*)

16.     The Guaranty by its terms applies to the First Promissory Note, "and any extension, renewal, modification or amendment thereof, regardless of whether Guarantors or either of them consent thereto or receive notice thereof."  (Ex. 2 at 2)

17.     SRE Capital defaulted on the First Promissory Note.

18.     Despite that, based on representations made by Mr. Grant Brunner, described more specifically below, Mr. Brubaker agreed to renew the First Promissory Note through the terms of a Promissory Note dated September 2, 2022 ("Second Promissory Note").  A true and correct copy of the Second Promissory Note is attached hereto and incorporated herein as **Exhibit 3**.

19.     The Second Promissory Note increased the interest due to Mr. Brubaker on the outstanding principal of $200,000 to twenty percent (20%), stated as $240,000 in the Note, and was secured by a Deed of Trust dated June 27, 2022 granting Mr. Brubaker an interest, as more fully described therein, in the following legally described property located in the County of Weld, State of Colorado: BER SRWH L1 SERENITY RIDHE AT WILSON HOMESTEAD PUD known as No. 3121 Megan Circle, Berthoud, Colorado 80513, and guaranteed by the Guaranty. (*See* Ex. 3 at 1)

20.     Payment was due under the Second Promissory Note by September 15, 2022.  (*Id.*)

21.     SRE Capital defaulted on its obligations under the Second Promissory Note, which will be shown to have been fraudulently backed with collateral that did not have any equity to cover Mr. Brubaker's investment.

22.     On May 15, 2023, based on representations made by Defendants, SRE Capital executed a renewed Promissory Note in favor of Mr. Brubaker in the amount of the outstanding debt owed to Mr. Brubaker, $200,000 ("Third Promissory Note").  A true and correct copy of the Third Promissory Note is attached hereto and incorporated herein as **Exhibit 4**.

23.     The Third Promissory Note accrued interest at a rate of thirty-two and a half percent (32.5%), stated as $265,000 in the Note, and was secured by the Deed of Trust dated June 27, 2022 and guaranteed by the Guaranty.  (*See* Ex. 4 at 1)

24.     Payment was due by June 15, 2023 under the terms of the Third Promissory Note. (*Id.*)

25.     SRE Capital defaulted on its obligations.

26.     As of the date of filing this Complaint, SRE Capital has failed to meet any of its obligations under the First Promissory Note, Second Promissory Note, and now the Third Promissory Note (collectively, the "Notes"), and the Guarantors have failed to make payment pursuant to the terms of the Guaranty.

### *Defendants' Misrepresentations*

27.     For purposes of specificity, each of the following specific acts and omissions of Defendants (the "Wrongful Acts") relate to the causes of action set forth below.

28.     Over the past two years, Mr. Brubaker has engaged in numerous communications with Grant Brunner, many of which contained significant misrepresentations by Grant Brunner.

29.     For example, Grant Brunner informed Mr. Brubaker that the funds he was loaning would be used by SRE Capital to invest in the Rocky Heights Property.

30.     However, when Mr. Brubaker asked how the funds that he loaned SRE Capital were being utilized, and specifically asked for confirmation as to which property the funds were invested in, Grant Brunner refused to provide the information to Mr. Brubaker.

31.     Instead, Grant Brunner simply informed Mr. Brubaker that he had security in Mr. Brunner's home but admitted that Mr. Brubaker was approximately tenth in line under the Deed of Trust.

32.     When Mr. Brubaker asked how Mr. Brunner could let this happen, Mr. Brunner simply stated, "I am sorry, we never expected to get into this situation."

33.     In addition, following SRE Capital's default on the First Promissory Note, Grant Brunner engaged in a series of communications with Mr. Brubaker containing numerous representations in an effort to induce Mr. Brubaker to renew the loan he made to SRE Capital.

34.     Among other things, Grant Brunner represented the following to Mr. Brubaker on July 11, 2022: "Things are rolling here, we have a couple closings cashing out soon and new ones to go into so that's always best case."

35.     On September 15, 2022, Grant Brunner represented the following to Mr. Brubaker: "Just keeping you updated on our payback . . . today was D-Day for my investor to close and he can't get it done so we're moving on and keeping his $25K earnest money.  We have a couple others already lined up as well as another closing that hits end of the month so we'll get you taken care of then."

4887-5627-2000.3

36.     Grant Brunner represented the following to Mr. Brubaker on September 30, 2022: "Just keeping you in the loop, we're closing on Wed morning so plan on me sending you $250K thereafter."

37.      On October 7, 2022, after asked by Mr. Brubaker for an update, Grant Brunner represented the following to Mr. Brubaker: "we didn't close Wed.  Buyer wanted to renegotiate the price . . . .  So it goes back on the market but we'll pay you the $250K from another home that's under contract to close on 10/27."  Sorry for the delay but we'll get you closed out soon."

38.     Grant Brunner represented the following to Mr. Brubaker on November 3, 2022: "Just updating you Mike they're working to close on our property tomorrow am so we can send funds thereafter."

39.     On November 15, 2022, after asked by Mr. Brubaker for an update on the closing, Grant Brunner represented the following to Mr. Brubaker: "We'll know the buyer's income status today Mike."

40.     Grant Brunner represented the following to Mr. Brubaker on November 16, 2022: "So as of today the buyer's income is still short but the lender did say last week that based on how he's paid that may be the case mid-month. . . .  So we're going with it for 12/1.  Also wanted to mention the original deal we were going to pay you back from is under contract again for 12/3 so we have a couple options to get you covered."

41.     On December 2, 2022, Grant Brunner represented the following to Mr. Brubaker: "The lender is still working through it as buyer may be able to put more money down to make it work so we will catch you next week."

42.     On December 7, 2022, after asked by Mr. Brubaker for an update, Grant Brunner represented the following to Mr. Brubaker: "The buyer's going to put more money down to make

6

this fly so they're in the process of getting it from a family member.  Waiting to hear on exact timing of it but expect line of sight soon."

43.     On December 8, 2022, after asked by Mr. Brubaker if the original deal was closing on December 13, 2022 because he really needed to cash out, Grant Brunner represented the following to Mr. Brubaker: "Correct Mike, that one is scheduled for next week so we'll get you out of this."

44.     On December 16, 2022, Grant Brunner represented the following to Mr. Brubaker: "GM!  Just confirming with you we're closing this afternoon so I will send your funds on Monday. Will let you know when they're sent."

45.     Grant Brunner represented the following to Mr. Brubaker on December 19, 2022: "I need to let you know that our closing didn't go through on Friday afternoon. . . .  Just so you know we do have the ball rolling to pull funds from another property to get you repaid so I'll get back with you asap on that as well.  I'm truly sorry for the delay and putting you in a bad spot."

46.     On December 19, 2022, after asked by Mr. Brubaker if the closing that was supposed to happen on December 13, 2022 also fell through, Grant Brunner represented the following to Mr. Brubaker: "No, this was the one originally scheduled for the 13th Mike.  It's not over yet either. . . .  Regarding the other, the buyers are still working to come up with more cash so that's still working too.  Bottom line I know you just need out of this, so we're working all angles to get there."

47.     On December 19, 2022, after told by Mr. Brubaker that he has been holding off on exercising company stock options and the implications on not being repaid had negative tax consequences, Grant Brunner represented the following to Mr. Brubaker: "Got it Mike, totally understand.  We'll work as quick as we can on this."

48.     On January 5, 2023, after asked by Mr. Brubaker if they could talk that evening, Grant Brunner represented the following to Mr. Brubaker: "Of course, hit me anytime. I've been sitting on updating you as I just want to be able to tell you it's done. We're selling our interest outright to our partner in one of our rentals so he's working to get us our cash by the week of the 16th and hope to get one of the closings done then too."

49.     On January 15, 2023, after asked by Mr. Brubaker if he was available to talk, Grant Brunner represented the following to Mr. Brubaker: "Just seeing this. I can hit you tomorrow afternoon, will be talking with our partner in the morning."

50.     Grant Brunner represented the following to Mr. Brubaker on January 16, 2023: "I can talk with you this afternoon Mike but am thinking maybe we just wait until tomorrow as I will know the status of our closing then as well as the timing of getting our funds from our partner."

51.     On January 25, 2023, Grant Brunner represented the following to Mr. Brubaker: "FYI that I'm seeing our partner at lunch today, will let you know where things stand."

52.     Grant Brunner represented the following to Mr. Brubaker on January 25, 2023: "He said all they're waiting on is the appraisal. . . . still expected it this week so will be in touch asap."

53.     On January 29, 2023, Grant Brunner represented the following to Mr. Brubaker: "No new update as of Friday but will be talking with him tomorrow."

54.     Grant Brunner represented the following to Mr. Brubaker on January 30, 2023: "Just talked with our partner Mike, they're still navigating through the appraisal as the initial value didn't come in where they expected. But they have a work around in place so he said the lender told him that will get done this week."

55.     On February 3, 2023, Grant Brunner represented the following to Mr. Brubaker: "I need to tell you it's still not done Mike. I told him we have to have a firm date to plan on. Sorry."

56.    On February 11, 2023, after Mr. Brubaker asks for the property addresses, Grant Brunner represented the following to Mr. Brubaker: "Yeah, I've sat on it Mike as our guy's refi is going through so that will take care of it."

57.    Grant Brunner represented the following to Mr. Brubaker on February 12, 2023: "So they're still trying to get the full value out of his building's appraisal but as of right now it's $80K short.  I talked with him Thursday and he said if he can't he's going to pull the rest out of his own home through an equity line.  He has the ball rolling on that so I'm hoping it gets done in the next week."

58.    On February 18, 2023, after Mr. Brubaker asks for an update on any of the three properties, Grant Brunner represented the following to Mr. Brubaker: "The refi's are coming through.  He's just waiting on his homes HELOC to process. . . .  I will update you by Wed as ideally we'll have funds in hand."

59.    Grant Brunner represented the following to Mr. Brubaker on February 22, 2023: "The quick update is he's just waiting on the green light from his bank re: his equity line.  I'm heading out of town tomorrow but will confirm as soon as receive funds."

60.    On February 24, 2023, after Mr. Brubaker explains the lack of repayment on the promissory note has thousands of dollars' worth of tax consequences for him, Grant Brunner represented the following to Mr. Brubaker: "I know this is jamming you up.  Haven't heard from him but will today at some point so will report back."

61.    On March 2, 2023, after Mr. Brubaker explains that he needs to get the money to the company by March 7; otherwise he will be forced to take funds out of another investment, Grant Brunner represented the following to Mr. Brubaker: "I'm sorry Mike but they're not getting

this done by tomorrow. . . . I know this will cost you to pull funds elsewhere so plan to let us make up that difference when we settle up."

62.     On March 5, 2023, after Mr. Brubaker requests all of the investment property addresses and points out his discovery that the original address on the promissory note was changed to Grant Brunner's home address, Grant Brunner represented the following to Mr. Brubaker: "Morning - Got it Mike.  You're obviously right so I will get back to you."

63.     On March 5, 2023, after Mr. Brubaker explains that he needs to know what is going on and how bad things actually are, Grant Brunner represented the following to Mr. Brubaker: "Absolutely.  You know I completely understand that.  Let me get the week started and see where everything stands and let's book a time to talk Tues/Wed when it works for you."

64.     Grant Brunner represented the following to Mr. Brubaker on March 8, 2023: "Just want to let you know they're close to getting his refi done.  He said yesterday they can rescore his credit as soon as the collection is removed."

65.     On March 10, 2023, after Mr. Brubaker explains that he thought he made it clear that they needed to speak on the phone live and provides his availability, Grant Brunner represented the following to Mr. Brubaker: "Sure Mike, we certainly can.  I just sent you that though to let you know that this will take care of it.  I can't talk by 10 but let me get an update from them today and we can go from there."

66.     On March 10, 2023, Grant Brunner represented the following to Mr. Brubaker: "My guy's saying this is getting done.  If it's not by say Wednesday we'll talk through plan B.  Have a good weekend."

67.     On March 24, 2023, after Mr. Brubaker asks for yet another update on the investment properties, Grant Brunner represented the following to Mr. Brubaker: "The Aurora

prop is under contract for 4/17.  We couldn't land that cash buyer for Thorton.  And the refi funds are more likely to come after the 1st.  They're still rescoring his report but the lender said the 1st is when it's most likely to drop off at this point."

68.     On April 7, 2023, after Mr. Brubaker asks for another update on the status of the refinance and emphasizes he needs to be paid this month, Grant Brunner represented the following to Mr. Brubaker: "They're working through the refi still but the 4/17 closing date is set.  I'll confirm that again with you end of next week."

69.     On April 16, 2023, after Mr. Brubaker asks if the closing is still set for Monday, Grant Brunner represented the following to Mr. Brubaker: "It's at 3pm tomorrow."

70.     On April 18, 2023, after Mr. Brubaker asks to confirm wiring instructions later today, Grant Brunner represented the following to Mr. Brubaker: "Hit me later this afternoon."

71.     On April 18, 2023, wherein the following investment property information was relayed to Mr. Brubaker during a telephone call, Grant Brunner represented the following to Mr. Brubaker:

> The South Aurora property has a 50/50 ownership with SRE Capital and an unnamed business partner valued at $800K.  Property was on the market for sale. SRE Capital's 50% position was based on a $200K loan, $600K equity, resulting in a $300K cash out against the $800K value for SRE to cover Mr. Brubaker's investment & interest.  The property currently has a long-time renter in it and rent was scheduled to go up in June to $2600 per month, which was a significant increase.

72.     On April 18, 2023, wherein the following investment property information was relayed to Mr. Brubaker during a telephone call, Grant Brunner further represented the following to Mr. Brubaker:

> The Thorton property has a 2/3 ownership by SRE Capital and a 1/3 ownership by an unnamed rehab partner valued at $675K.  Property was on the market for sale. There is a cash buyer and is supposed to be in contract this week.

73.     On that same call on April 18, 2023, wherein the following investment property information was relayed to Mr. Brubaker during a telephone call, Grant Brunner represented the following to Mr. Brubaker:

> The Aurora property has a 2/3 ownership by SRE Capital and 1/3 ownership by an unnamed rehab partner valued at $650K.  Property is being rebuilt.  This is a wholesale deal which has tied them up.  SRE was working a deal to put them under contract to flip to another investor.

74.     Moreover, Grant Brunner represented the following to Mr. Brubaker over the phone on April 18, 2023:

> There is $1.2M in equity against all three properties.  Grant is going to be closing on one of those properties later today.

75.     On April 19, 2023, after Mr. Brubaker requests the last mortgage statement for the 3121 Megan Circle, Berthoud, Colorado 80513 property and states a rental property will need to be signed over if there isn't enough collateral to cover the promissory note, Grant Brunner represented the following to Mr. Brubaker: "Confirming I got your text earlier.  Waiting to hear back from their lender on our deal."

76. On April 21, 2023, after Mr. Brubaker requests an update, Grant Brunner represented the following to Mr. Brubaker: "I don't really have anything new on it Mike. They couldn't pull it together this week so our agent has been working with their lender on a workaround that may work."

77. On April 25, 2023, after Mr. Brubaker asks to discuss other options for collateral if the 3121 Megan Circle, Berthoud, Colorado 80513 property does not have enough to cover the promissory note, Grant Brunner represented the following to Mr. Brubaker: "I'm going to get back with you tomorrow Mike when I'm in my office. We're working to lock down our closing for the 2nd next week so hopefully this is all unnecessary."

78. Grant Brunner represented the following to Mr. Brubaker on April 26, 2023: "They've scheduled our Aurora closing again for the 2nd so let's see if we can just get it done and if not we'll move accordingly."

79. On May 3, 2023, after Mr. Brubaker asks twice to be called, Grant Brunner represented the following to Mr. Brubaker: "I'll call you back tomorrow, Mike. We've been out with an agent this afternoon."

80. On May 11, 2023, after Mr. Brubaker does not receive a return phone call and again requests the status, Grant Brunner represented the following to Mr. Brubaker: "We're going to meet up tomorrow in Denver to get it signed, he's been unavailable. Did you make it to town?"

81. Grant Brunner represented the following to Mr. Brubaker on May 11, 2023: "I'll get an email copy of the recorded deed so I can forward it to you."

82. On May 12, 2023, after Mr. Brubaker questions why there is nothing for him to sign, Grant Brunner represented the following to Mr. Brubaker: "There's nothing for a lender to sign on a deed, only the property owner does so. I could tell our partner is reluctant to do this as

he's pushed it out all week so he's asked his attorney to look into drafting a doc for he and I that protects his interest in the property."

83.     On May 14, 2023, after Mr. Brubaker asks for the new notarized promissory note for $265K that was verbally agreed to the last time they spoke, Grant Brunner represented the following to Mr. Brubaker: "Yep, will do Mike."

84.     On May 20, 2023, after Mr. Brubaker asks if the new promissory note has been sent, Grant Brunner represented the following to Mr. Brubaker: "Yep Mike, we got the updated note mailed out on Tuesday.  Will hit you on Mon regarding our prop's."

85.     On May 22, 2023, Grant Brunner represented the following to Mr. Brubaker: "I'll be able to give you a better update by Wed Mike.  We've got one getting closer and my agent told me earlier she'll know on it by then."

86.     On June 3, 2023, after Mr. Brubaker asks if Thorton closed, Grant Brunner represented the following to Mr. Brubaker: "Not yet Mike but they're making progress."

87.     On June 9, 2023, after Mr. Brubaker asks if they can talk over the weekend, Grant Brunner represented the following to Mr. Brubaker: "Let's talk Monday Mike or early next week, we're heading out of town now for a tourney.  Just name a time that works for you."

88.     On June 9, 2023, after Mr. Brubaker demands to speak this weekend, as he is out of town for work the upcoming week, Grant Brunner represented the following to Mr. Brubaker: "I'll be dropping Gavin off about 1:30 for his second game, I can call you then?"

89.     On June 10, 2023, wherein the following equity and collateral information was relayed to Mr. Brubaker by Grant Brunner during a telephone call:

-     Grant Brunner admitted that there was never any equity in his home at 3121 Megan Circle, Berthoud, Colorado 80513 to cover the loan; and

- The Thorton investment property is closing on June 20, 2023.

90. On June 16, 2023, after Mr. Brubaker asks if the Thorton investment property is still scheduled for closing on June 20, 2023, Grant Brunner represented the following to Mr. Brubaker: "Yep, it's one of the Aurora prop's but it is."

91. Grant Brunner represented the following to Mr. Brubaker on June 20, 2023: "Hey just letting you know it didn't get done this afternoon.  But there's only one condition that needs to be signed off on and the lender just told us that will happen this week."

92. On July 14, 2023, after Mr. Brubaker has waited three weeks and requests an update, Grant Brunner represented the following to Mr. Brubaker: "I'm going to get back with you on Tuesday Mike as we need to get past the 15th and they can submit the file again on Monday. I'm in Birmingham for bball so wasn't able to catch your call."

93. Grant Brunner represented the following to Mr. Brubaker on July 19, 2023: "FYI that we're going to know on this tomorrow Mike.  Our buyer paid down more of his balance on Monday so underwriting will have it today."

94. Grant Brunner represented the following to Mr. Brubaker on July 20, 2023: "No answer yet but they said we'll have it tomorrow."

95. Grant Brunner represented the following to Mr. Brubaker on July 21, 2023: "One mortgage company was a definitive no this morning but the other may be a go.  Will let you know."

96. Grant Brunner represented the following to Mr. Brubaker on July 31, 2023, after Mr. Brubaker asks for a definitive repayment date: "Will let you know end of day/first thing tomorrow."

97. Grant Brunner represented the following to Mr. Brubaker on August 2, 2023, after Mr. Brubaker explains how violated he feels with the whole deal and asks why the equity in another

investment property is not being used to repay him: "I wanted to get confirmation before responding but we have a closing scheduled for Monday at 1pm. I know there's nothing that can be said at this point we just have to get you paid back. So I will be touch then."

98.     On August 7, 2023, after Mr. Brubaker asks if the closing is really happening that day, Grant Brunner represented the following to Mr. Brubaker: "Waiting to hear from our agent."

99.     On August 7, 2023, after Mr. Brubaker asks which property is allegedly closing that day, Grant Brunner represented the following to Mr. Brubaker: "It's our Thorton house for $735K."

100.    Pursuant to the above representations, it is evident that Defendants required funds from other investors to be able to pay its contractual obligations to Mr. Brubaker.

101.    Moreover, it is now apparent that the above representations were false and were intended to induce Mr. Brubaker into entering into additional Promissory Notes and/or to induce Mr. Brubaker not to take action to enforce his rights under the Promissory Notes, Guaranty, and Deed of Trust.

Demand For Payment

102.    By correspondence dated September 5, 2023, Mr. Brubaker demanded full payment under the Notes and Guaranty.

103.    As of the date of filing, Defendants have failed to make payment under the Notes or Guaranty.

## CLAIMS FOR RELIEF

### COUNT I – Breach of Contract

### Promissory Notes

104.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein and further alleges as follows:

105.   Mr. Brubaker and SRE Capital entered into three Notes, which are valid and binding written agreements between Plaintiff and SRE Capital, whereby SRE Capital agreed to repay Plaintiff the principal balance and interest, pursuant to the terms of the Notes.

106.   SRE Capital breached its obligations under the Notes a by failing to make payments when due.

107.   SRE Capital remains in breach on their obligations under the Notes from Plaintiff.

108.   Plaintiff has fully performed his obligations under the Notes and all conditions precedent to enforce its rights under the Notes.

109.   As a direct and proximate cause of SRE Capital's breach, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

### COUNT II – Breach of Contract

### Guaranty

110.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein and further alleges as follows:

111.   Mr. Brubaker entered into a valid and binding Guaranty with Greg Brunner and Grant Brunner (the "Guarantors") in which the Guarantors agreed to "jointly and severally unconditionally guarantee" to Mr. Brubaker the full and punctual payment due under the Note. (Ex. 2 ¶ 1).

112.   The Guarantors further agreed to "keep, perform and observe" the covenants and conditions of the Note in case of default by SRE Capital. (Ex. 2 ¶ 2).

113.   The Guarantors breached its obligations under the Guaranty a by failing to perform the obligations pursuant to the Note after SRE Capital defaulted to make payments when due. (Ex. 2 ¶ 3).

114.    The Guarantors remain in breach on their obligations under the Guaranty from Plaintiff.

115.    Plaintiff has fully performed his obligations under the Guaranty and corresponding Notes and all conditions precedent to enforce its rights under the aforementioned agreements.

116.    As a direct and proximate cause of Guarantors' breach, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

### COUNT III – Fraudulent Misrepresentation

117.    Plaintiff repeats and realleges each allegation contained above as if set forth fully herein and further alleges as follows:

118.    As more particularly set forth above as Wrongful Acts, Defendants made and are responsible for false and misleading statements of material fact and statements that omitted a material fact.

119.    More specifically, Defendants misrepresented the closing status on SRE Capital's investment properties to appear as if multiple closings were cashing out soon while simultaneously misleading Plaintiff to believe that his investment was "taken care of" (September 15, 2022), that "things are rolling here" (July 11, 2022), and that Plaintiff should "plan on [Defendants] sending [Plaintiff] $250K thereafter" (September 30, 2022).

120.    When Plaintiff wanted out of his investment, Defendants falsely reassured him on December 8, 2022, stating "we'll get you out of this."

121.    In addition, Defendants' description of SRE Capital's business likened that of a Ponzi scheme stating Defendants "do have the ball rolling to pull funds from another property to get [Plaintiff] repaid…" and representing to Plaintiff that his investment is contingent on Defendants securing separate refinancing.

122.    Based on these comments, SRE Capital appears to require funds from other investors before it can repay Mr. Brubaker the funds due and owing to him.

123.    Defendants knew that the investment property's address on the promissory note was changed to Grant Brunner's personal home address, yet they continued to evade Plaintiff's inquiries into why the address was changed.

124.    When Plaintiff expressed concern and demanded more information on the performance of SRE Capital's investment properties as well as the repayment of his funds under the Notes, Defendants eluded the question by promising on March 5, 2023 to "get back to [Plaintiff]." Defendants further misrepresented the equity ownership in the property at 3121 Megan Circle, Berthoud, Colorado 80513 on June 10, 2023 and falsely promised that the Thorton investment property was closing on June 20, 2023.

125.    So too did Defendants misrepresent the involvement of underwriters stating definitively on July 19, 2023 that the underwriting "will have it today."

126.    Accordingly, Defendants engaged in a series of misrepresentations regarding the status of SRE Capital and Mr. Brubaker's investment.

127.    Mr. Brubaker justifiably relied upon the representations made by Defendants in making his decision to lend funds to SRE Capital and in executing the Notes.

128.    Mr. Brubaker further relied upon the representations made by Defendants after the Guaranty was executed thereby providing further safeguard on his loan.

129.    Plaintiff was unaware of Defendants' wrongdoings and continued to inquire in good faith about the use of his funds.

130.    Defendants made the false representation knowing that doing so would prevent Plaintiff from demanding the property as collateral and otherwise exercising his rights under the Notes, Deed of Trust and Guaranty.

131.    Due to Plaintiff's reliance on Defendants' false representations, Plaintiff has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff requests that the Court find in its favor and against Defendants and that the Court grand Plaintiff the following relief:

a.    Judgement against Defendants awarding the full amount due and owing to Plaintiff under the First, Second, and Third Promissory Notes;

b.    That Defendants pay any and all additional damages to which Plaintiff is entitled under Plaintiff's causes of action;

c.    Pre and Post Judgment interest as permitted by law;

d.    Attorneys' fees; and

[Remainder of Page Intentionally Left Blank]

e.      Such other and further relief as the Court may deem just and proper under the circumstances.

Dated this 29th day of September, 2023.

Respectfully submitted,

MICHAEL BRUBAKER, Plaintiff

By: */s/ Victoria H. Buter*
     Victoria H. Buter (NE Bar #23841)
     KUTAK ROCK LLP
     The Omaha Building
     1650 Farnam Street
     Omaha, Nebraska 68102-2186
     Telephone: (402) 346-6000
     Facsimile: (402) 346-1148
     vicki.buter@kutakrock.com


By: */s/ Jeremy D. Peck*
     Jeremy D. Peck (CO Bar #36588)
     KUTAK ROCK LLP
     2001 16th Street, Suite 1800
     Denver, Colorado 80202
     Telephone: (303) 297-2400
     Facsimile: (303) 292-7799
     jeremy.peck@kutakrock.com