**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02544-NYW-NRN

MICHAEL BRUBAKER,

      Plaintiff,

v.

SRE CAPITAL, LLC,[1]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"). [Doc. 14]. The Court has reviewed the Motion and the docket and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth in this Order, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiff Michael Brubaker ("Plaintiff" or "Mr. Brubaker") initiated this civil action on September 29, 2023, asserting claims against Grant Brunner, Gregory Brunner (together, the "Brunners"), and SRE Capital, LLC ("Defendant" or "SRE Capital"), for breach of

---

[1] On June 3, 2024, Plaintiff filed a status report explaining that, because "no estates have been opened and no personal representatives have been appointed for the Brunners," there "is no proper party(ies) who may be substituted in this action for the Brunners." [Doc. 36 at ¶¶ 8–9]. On June 20, 2024, Plaintiff filed a Motion for Voluntary Dismissal as to Defendants Grant Brunner and Gregory Brunner (the "Motion to Dismiss"). [Doc. 37]. The Court granted Plaintiff's Motion to Dismiss, thereby dismissing Plaintiff's claims against the Brunner Defendants without prejudice. [Doc. 39]. Accordingly, SRE Capital, LLC is the only remaining Defendant.

contract and fraudulent misrepresentation. *See generally* [Doc. 1]. The Complaint asserts three claims for relief for (1) breach of contract against SRE Capital for alleged breaches of its obligations under three promissory notes executed in 2022 and 2023 ("Count I"), [*id.* at ¶¶ 104–09]; (2) breach of contract against the Brunners for alleged breach of a personal guaranty related to the promissory notes ("Count II"), [*id.* at ¶¶ 110–16]; and (3) fraudulent misrepresentation against the Brunners and SRE Capital in connection with the Parties' business dealings ("Count III"), [*id.* at ¶¶ 117–31].

The Brunners and SRE Capital filed an Answer to the Complaint on November 2, 2023. [Doc. 12]. Less than two weeks later, Plaintiff filed the instant Motion for Summary Judgment. [Doc. 14]. On November 17, 2023, then-counsel for the Brunners and SRE Capital filed a motion to withdraw as counsel, [Doc. 16], prompting the Honorable N. Reid Neureiter to set an in-person status conference in this case for November 28, 2023, [Doc. 17]. Neither the Brunners nor SRE Capital appeared at the November 28 Status Conference, during which Judge Neureiter granted the Motion to Withdraw and set a second Status Conference for December 20, 2023. [Doc. 19]. Pursuant to the Parties' non-consent to the jurisdiction of a magistrate judge, this case was also reassigned to the undersigned. [*Id.*; Doc. 20].

On November 29, 2023, Judge Neureiter issued an Order to Show Cause, ordering the Brunners and SRE Capital to appear in person at the December 20 Status Conference and to show cause why the Court should not recommend that the undersigned enter a default judgment against the Brunners and SRE Capital. [Doc. 24]. Later that day, former counsel for the Brunners and SRE Capital filed a Notice of Suggestion of Death stating that "a family member of Grant Brunner and Gregory Brunner, SRE Capital['s] principals,

informed [their former] counsel that Grant Brunner and Gregory Brunner died on November 28, 2023."  [Doc. 26 at 1].

On February 28, 2024, Judge Neureiter granted Plaintiff's request for an extension of time, through May 27, 2024, in which to file a motion for substitution of parties under Fed. R. Civ. P. 25(a)(1). [Doc. 32; Doc. 34]; *see also* Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.").  Plaintiff did not file a timely motion for substitution of parties.

On June 20, 2024, Plaintiff filed his Motion to Dismiss the Brunners.  [Doc. 37]. The Court granted Plaintiff's Motion to Dismiss, thereby dismissing Plaintiff's claims against the Brunners without prejudice.   [Doc. 39].   Plaintiff's Motion for Summary Judgment remains pending against SRE Capital,[2] and the Court considers it now.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (quotation omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the

_____

[2] In conjunction with his June 3 Status Report, Plaintiff requested that this Court "grant his [Motion for Summary Judgment] as to SRE Capital."  [Doc. 36 at ¶ 9].

nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).

***Failure to Respond to Motion for Summary Judgment.***  Summary judgment is not proper merely because the nonmoving party fails to file a response.  Here, SRE Capital's failure to file a response to the Motion does not relieve the Court of its duty to make the specific determinations required by Fed. R. Civ. P. 56(a).  "Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (quotation omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

"A district court may not grant summary judgment based on the nonmovant's failure to file a response, but a plaintiff who fails to file a timely response waives the right

to respond and to controvert the facts asserted in the motion." *Palzer v. CoxCom, LLC*, 833 F. App'x 192, 199–200 (10th Cir. 2020) (citing *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002)). Thus, if the party opposing summary judgment fails to timely respond with evidence that creates a genuine factual dispute, the court may "consider the [movant's] fact[s] undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e); *see also Palzer*, 833 F. App'x at 200; *Reed*, 312 F.3d at 1194.

"Of course, in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate."  *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254–55 (10th Cir. 2017) (citing Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment ("Once the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine the legal consequences of these facts and the permissible inferences from them.")).  If the evidence in support of the motion does not meet the movant's initial burden of showing that no genuine dispute of material fact exists, however, the motion "must be denied even if no opposing evidentiary matter is presented."  *Reed*, 312 F.3d at 1194 (cleaned up).

## UNDISPUTED MATERIAL FACTS

The following facts are drawn from the Motion and the record before the Court and are undisputed unless otherwise noted.

1.      At all relevant times pertinent hereto, Mr. Brubaker has been a resident of Milton, Georgia.  [Doc. 1 at ¶ 1; Doc. 12 at ¶ 1; Doc. 14 at ¶ 1].

2.      SRE Capital is a limited liability company with members based in Colorado and a principal place of business located in Greenwood Village, Colorado.  [Doc. 1 at ¶ 2; Doc. 12 at ¶ 2; Doc. 14 at ¶ 2].

3.      Grant Brunner and Gregory Brunner were individuals residing in Colorado. [Doc. 1 at ¶¶ 3–4; Doc. 12 at ¶¶ 3–4; Doc. 14 at ¶ 3].

4.      On or about May 26, 2022, Mr. Brubaker provided $200,000 of funding to SRE Capital pursuant to the terms of a Promissory Note dated May 26, 2022 (the "First Promissory Note") in which the indebtedness owed by SRE Capital under the First Promissory Note accrued interest at a rate of ten percent (10%), and $220,000 (principal plus interest) was due on or before July 15, 2022.  [Doc. 1 at ¶¶ 8–9; Doc. 12 at ¶¶ 8–9; Doc. 14 at ¶ 4; Doc. 15 at ¶ 2; Doc. 15-1].

5.      The terms of the First Promissory Note were suggested by Grant Brunner, and if the indebtedness was not paid by July 15, 2022, Mr. Brubaker was entitled to an additional five percent (5%) interest.  [Doc. 1 at ¶ 10; Doc. 12 at ¶ 10; Doc. 14 at ¶ 5; Doc. 15 at ¶ 3].

6.      The First Promissory Note required a sum of $230,000 to be paid by August 15, 2022.  [Doc. 1 at ¶ 10; Doc. 12 at ¶ 10; Doc. 14 at ¶ 5].

7.      The First Promissory Note was secured by a Deed of Trust dated May 26, 2022, which granted Mr. Brubaker the rights described therein on an SRE Capital investment property located in the County of El Paso, State of Colorado:  LOT 6 OAK

MOUNTAIN ESTATES known as No. 2780 Rocky Heights Drive, Colorado Springs, Colorado 80921 (the "Rocky Heights Property"). [Doc. 14 at ¶ 6; Doc. 15 at ¶ 4].

8.     The May 26, 2022 Deed of Trust (the "Deed of Trust") was never recorded by Defendants, despite representations made to Mr. Brubaker that it would be recorded. [Doc. 14 at ¶ 7; Doc. 15 at ¶ 5].

9.     Mr. Brubaker understood from representations made by SRE Capital and, specifically, Grant Brunner, that the funds Mr. Brubaker loaned SRE Capital pursuant to the First Promissory Note would be used to invest in the Rocky Heights Property. [Doc. 1 at ¶ 12; Doc. 12 at ¶ 12; Doc. 14 at ¶ 8; Doc. 15 at ¶ 6].

10.     The First Promissory Note was also guaranteed by a personal guaranty signed by Grant Brunner and Gregory Brunner (the "Guaranty"). [Doc. 1 at ¶ 13; Doc. 12 at ¶ 13; Doc. 14 at ¶ 9; Doc. 15 at ¶ 10; Doc. 15-2].

11.     SRE Capital defaulted on the First Promissory Note. [Doc. 1 at ¶ 18; Doc. 12 at ¶ 18; Doc. 14 at ¶ 13; Doc. 15 at ¶¶ 9, 11; Doc. 15-3].

12.     Based on representations made by Grant Brunner, Mr. Brubaker agreed to renew the First Promissory Note through the terms of a Promissory Note dated September 2, 2022 (the "Second Promissory Note"). [Doc. 1 at ¶ 18; Doc. 12 at ¶ 18; Doc. 14 at ¶ 13; Doc. 15 at ¶¶ 9, 11; Doc. 15-3].

13.     The First Promissory Note was extended through to the Second Promissory Note. [Doc. 1 at ¶ 17; Doc. 12 at ¶ 17; Doc. 14 at ¶ 14].

14.     The Second Promissory Note increased the interest due to Mr. Brubaker on the outstanding principal of $200,000 to twenty percent (20%), stated as $240,000 in the Note, and was secured by a deed of trust dated June 27, 2022, granting Mr. Brubaker an

interest in the following property located in Weld County, Colorado: BER SRWH L1 SERENITY RIDGE AT WILSON HOMESTEAD PUD, known as No. 3121 Megan Circle, Berthoud, Colorado 80513 (the "Berthoud Property"), and guaranteed by the Guaranty. [Doc. 1 at ¶ 19; Doc. 12 at ¶ 19; Doc. 14 at ¶ 15; Doc. 15 at ¶¶ 11–12].

15.     Payment was due under the Second Promissory Note by September 15, 2022.  [Doc. 1 at ¶ 20; Doc. 12 at ¶ 20; Doc. 14 at ¶ 16; Doc. 15 at ¶ 11; Doc. 15-3 at 1].

16.     SRE Capital defaulted on its obligations under the Second Promissory Note, which was backed with collateral that did not have sufficient equity to cover Mr. Brubaker's investment.  [Doc. 14 at ¶ 16; Doc. 15 at ¶ 13].

17.     On May 15, 2023, SRE Capital executed a renewed Promissory Note in favor of Mr. Brubaker in the amount of the outstanding debt owed to Mr. Brubaker, $200,000 (the "Third and Final Promissory Note" or "Third Promissory Note").  [Doc. 1 at ¶ 22; Doc. 12 at ¶ 22; Doc. 14 at ¶ 17; Doc. 15 at ¶ 14; Doc. 15-4].

18.     The Third and Final Promissory Note accrued interest at a rate of thirty-two and one-half percent (32.5%), stated as $265,000 in the Note, and was secured by the Deed of Trust dated June 27, 2022, and guaranteed by the Guaranty.  [Doc. 1 at ¶ 23; Doc. 12 at ¶ 23; Doc. 14 at ¶ 18; Doc. 15 at ¶ 14; Doc. 15-4 at 1].

19.     The Third and Final Promissory Note was an extension of the First Promissory Note.  [Doc. 1 at ¶ 21; Doc. 12 at ¶ 21; Doc. 14 at ¶ 19].

20.     Mr. Brubaker agreed to the Third and Final Promissory Note based on representations made by SRE Capital.  [Doc. 1 at ¶ 22; Doc. 12 at ¶ 22; Doc. 14 at ¶ 17; Doc. 15 at ¶ 14].

21.     Under the terms of the Third and Final Promissory Note, payment was due by June 15, 2023.  [Doc. 1 at ¶ 24; Doc. 12 at ¶ 24; Doc. 14 at ¶ 19; Doc. 15 at ¶ 14; Doc. 15-4 at 1].

22.     SRE Capital defaulted on its obligations under the Third and Final Promissory Note.  [Doc. 1 ¶ 25; Doc. 12 at ¶ 25; Doc. 14 at ¶ 20; Doc. 15 at ¶ 15].

23.     SRE Capital has failed to meet any of its obligations under the First Promissory Note, Second Promissory Note, and Third and Final Promissory Note (collectively, the "Notes").  [Doc. 1 at ¶ 26; Doc. 12 at ¶ 26; Doc. 14 at ¶ 21; Doc. 15 at ¶¶ 15–17, 20].

24.     Over the past two years, Mr. Brubaker has engaged in numerous communications with Grant Brunner, many of which contained significant misrepresentations by Grant Brunner.  [Doc. 1 at ¶ 29; Doc. 12 at ¶ 29; Doc. 14 at ¶ 22; Doc. 15 at ¶ 18; Doc. 15-5].

25.     For example, Grant Brunner informed Mr. Brubaker that the funds Mr. Brubaker loaned to SRE Capital would be used by SRE Capital to invest in the Rocky Heights Property.  [Doc. 1 at ¶ 29; Doc. 12 at ¶ 29; Doc. 14 at ¶ 22].

26.     When Mr. Brubaker subsequently asked how the funds that he loaned SRE Capital were being utilized, including specifically asking for confirmation as to which property the funds were invested in, Grant Brunner refused to provide the information to Mr. Brubaker.  [Doc. 14 at ¶ 23; Doc. 15 at ¶ 7].

27.     Grant Brunner informed Mr. Brubaker that Mr. Brubaker had security in Grant Brunner's home—the Berthoud Property—but admitted that Mr. Brubaker was approximately tenth in line under the Deed of Trust.  [Doc. 14 at ¶ 24; Doc. 15 at ¶ 8].

28.     When Mr. Brubaker asked how Grant Brunner could let this happen, Grant Brunner simply stated, "I am sorry, we never expected to get into this situation."  [Doc. 1 at ¶ 32; Doc. 12 at ¶ 32; Doc. 14 at ¶ 24; Doc. 15 at ¶ 18; Doc. 15-5].

29.     After SRE Capital defaulted on the First Promissory Note, Grant Brunner engaged in a series of communications with Mr. Brubaker containing numerous misrepresentations in an effort to induce Mr. Brubaker to renew the loan he made to SRE Capital.  [Doc. 14 at ¶ 25; Doc. 15 at ¶ 18; Doc. 15-5].

30.     On July 11, 2022, Grant Brunner represented the following to Mr. Brubaker: "Things are rolling here, we have a couple closings cashing out soon and new ones to go into so that's always best case."  [Doc. 1 at ¶ 34; Doc. 12 at ¶ 34; Doc. 14 at ¶ 26; Doc. 15 at ¶ 18; Doc. 15-5 at 18–22].

31.     On September 15, 2022, Grant Brunner represented the following to Mr. Brubaker:  "Just keeping you updated on our payback . . . today was D-Day for my investor to close and he can't get it done so we're moving on and keeping his $25K earnest money. We have a couple others already lined up as well as another closing that hits end of the month so we'll get you taken care of then."  [Doc. 1 at ¶ 35 (alteration in original); Doc. 12 at ¶ 35; Doc. 14 at ¶ 27; Doc. 15 at ¶ 18; Doc. 15-5 at 23–24].

32.     On September 30, 2022, Grant Brunner represented the following to Mr. Brubaker:  "Just keeping you in the loop, we're closing on Wed [sic] morning so plan on me sending you $250K thereafter."  [Doc. 1 at ¶ 36; Doc. 12 at ¶ 36; Doc. 14 at ¶ 28; Doc. 15 at ¶ 18; Doc. 15-5 at 27–28].

33.     On October 7, 2022, after Mr. Brubaker requested an update, Grant Brunner represented the following to Mr. Brubaker:  "[W]e didn't close Wed [sic].  Buyer wanted to

renegotiate the price . . . .   So it goes back on the market but we'll pay you the $250K from another home that's under contract to close on 10/27.[]  Sorry for the delay but we'll get you closed out soon."  [Doc. 1 at ¶ 37 (ellipses in original); Doc. 12 at ¶ 37; Doc. 14 at ¶ 29; Doc. 15 at ¶ 18; Doc. 15-5 at 28–30].

34.     On November 16, 2022, Grant Brunner represented the following to Mr. Brubaker:  "[W]e have a couple options to get you covered."  [Doc. 1 at ¶ 40; Doc. 12 at ¶ 40; Doc. 14 at ¶ 30; Doc. 15 at ¶ 18; Doc. 15-5 at 32–33].

35.     On December 7, 2022, Mr. Brubaker asked if the original deal was closing on December 13, 2022, because he "really need[ed] to cash out."  [Doc. 14 at ¶ 31; Doc. 15 at ¶ 18; Doc. 15-5 at 34–35].

36.     On December 8, 2022, Grant Brunner responded, representing the following to Mr. Brubaker:  "Correct[,] Mike, that one is scheduled for next week so we'll get you out of this."  [Doc. 1 at ¶ 43; Doc. 12 at ¶ 43; Doc. 14 at ¶ 31; Doc. 15 at ¶ 18; Doc. 15-5 at 35].

37.     On December 16, 2022, Grant Brunner represented the following to Mr. Brubaker: "GM!  Just confirming with you we're closing this afternoon so I will send your funds on Monday.  Will let you know when they're sent."  [Doc. 1 at ¶ 44; Doc. 12 at ¶ 44; Doc. 14 at ¶ 32; Doc. 15 at ¶ 18; Doc. 15-5 at 37–40].

38.     On December 19, 2022, Grant Brunner represented the following to Mr. Brubaker:   "I need to let you know that our closing didn't go through on Friday afternoon . . . .   Just so you know we do have the ball rolling to pull funds from another property to get you repaid so I'll get back with you asap on that as well.  I'm truly sorry for

the delay and putting you in a bad spot."  [Doc. 1 at ¶ 45 (alterations in original); Doc. 12 at ¶ 45; Doc. 14 at ¶ 33; Doc. 15 at ¶ 18; Doc. 15-5 at 37–40].

39.     On February 11, 2023, after Mr. Brubaker asked for the property addresses, Grant Brunner represented the following to Mr. Brubaker:  "Yeah, I've sat on it[,] Mike[,] as our guy's refi is going through so that will take care of it."  [Doc. 1 at ¶ 56; Doc. 12 at ¶ 56; Doc. 14 at ¶ 34; Doc. 15 at ¶ 18; Doc. 15-5 at 46–47].

40.     On February 22, 2023, Grant Brunner represented the following to Mr. Brubaker:  "The quick update is he's just waiting on the green light from his bank re:  his equity line.  I'm heading out of town tomorrow but will confirm as soon as receive funds." [Doc. 1 at ¶ 59; Doc. 12 at ¶ 59; Doc. 14 at ¶ 35; Doc. 15 at ¶ 18; Doc. 15-5 at 50–51].

41.     On March 5, 2023, Mr. Brubaker requested all of the investment property addresses, and informed Grant Brunner that he discovered that the original address on the First Promissory Note was changed to Grant Brunner's home address.  [Doc. 1 at ¶ 62; Doc. 12 at ¶ 62; Doc. 14 at ¶ 36;  Doc. 15 at ¶ 18; Doc. 15-5 at 55].

42.     In response, Grant Brunner represented the following to Mr. Brubaker: "Morning - Got it[,] Mike.  You're obviously right so I will get back to you."  [Doc. 1 at ¶ 62; Doc. 12 at ¶ 62; Doc. 14 at ¶ 36; Doc. 15 at ¶ 18; Doc. 15-5 at 55–56].

43.     On March 24, 2023, Mr. Brubaker asked for another update on the investment properties.  [Doc. 1 at ¶ 67; Doc. 12 at ¶ 67; Doc. 14 at ¶ 37; Doc. 15 at ¶ 18; Doc. 15-5 at 58–59].

44.     In response, Grant Brunner represented the following to Mr. Brubaker:

> The Aurora prop is under contract for 4/17.  We couldn't land that cash buyer for Thorton.  And the refi funds are more likely to come

> after the 1st.  They're still rescoring his report but the lender said the
> 1st is when it's most likely to drop off at this point.

[Doc. 1 at ¶ 67; Doc. 12 at ¶ 67; Doc. 14 at ¶ 37; Doc. 15 at ¶ 18; Doc. 15-5 at 58–59].

45.     On April 7, 2023, Mr. Brubaker asked for another update on the status of the refinance and emphasized he needed to be paid that month.  [Doc. 1 at ¶ 68; Doc. 12 at ¶ 68; Doc. 14 at ¶ 38; Doc. 15 at ¶ 18; Doc. 15-5 at 59–60].

46.     In response, Grant Brunner represented the following to Mr. Brubaker: "They're working through the refi still but the 4/17 closing date is set.  I'll confirm that again with you end of next week."  [Doc. 1 at ¶ 68; Doc. 12 at ¶ 68; Doc. 14 at ¶ 38; Doc. 15 at ¶ 18; Doc. 15-5 at 59–60].

47.     On April 16, 2023, after Mr. Brubaker asked if the closing was still set for the following Monday, Grant Brunner represented the following to Mr. Brubaker:  "It's at 3pm tomorrow."  [Doc. 1 at ¶ 69; Doc. 12 at ¶ 69; Doc. 14 at ¶ 39; Doc. 15 at ¶ 18; Doc. 15-5 at 60–61].

48.     On April 18, 2023, the following investment property information was relayed to Mr. Brubaker during a telephone call with Grant Brunner, who represented the following to Mr. Brubaker:

> The South Aurora property has a 50/50 ownership with SRE Capital and an unnamed business partner valued at $800K.  Property was on the market for sale. SRE Capital's 50% position was based on a $200K loan, $600K equity, resulting in a $300K cash out against the $800K value for SRE to cover Mr. Brubaker's investment & interest. The property currently has a long-time renter in it and rent was scheduled to go up in June to $2600 per month, which was a significant increase.

> The Thorton property has a 2/3 ownership by SRE Capital and a 1/3 ownership by an unnamed rehab partner valued at $675K.  Property was on the market for sale.  There is a cash buyer and is supposed to be in contract this week.

> The Aurora property has a 2/3 ownership by SRE Capital and 1/3 ownership by an unnamed rehab partner valued at $650K. Property is being rebuilt.  This is a wholesale deal which has tied them up.  SRE was working a deal to put them under contract to flip to another investor.

[Doc. 1 at ¶¶ 71–73; Doc. 12 at ¶¶ 71–73; Doc. 14 at ¶ 40; Doc. 15 at ¶ 18; Doc. 15-5 at 2].

49.     Moreover, Grant Brunner represented the following to Mr. Brubaker over the phone on April 18, 2023:  "There is $1.2M in equity against all three properties.  Grant is going to be closing on one of those properties later today."  [Doc. 1 at ¶ 74; Doc. 12 at ¶ 74; Doc. 14 at ¶ 41; Doc. 15 at ¶ 18; Doc. 15-5 at 2].

50.     On May 11, 2023, Grant Brunner represented the following to Mr. Brubaker: "I'll get an email copy of the recorded deed so I can forward it to you."  [Doc. 1 at ¶ 81; Doc. 12 at ¶ 81; Doc. 14 at ¶ 42; Doc. 15 at ¶ 18; Doc. 15-5 at 66–67].

51.     On May 12, 2023, Mr. Brubaker questioned why there was nothing for him to sign.  [Doc. 1 at ¶ 82; Doc. 12 at ¶ 82; Doc. 14 at ¶ 43; Doc. 15 at ¶ 18; Doc. 15-5 at 67–68].

52.     In response, Grant Brunner represented the following to Mr. Brubaker:

> There's nothing for a lender to sign on a deed, only the property owner does so.  I could tell our partner is reluctant to do this as he's pushed it out all week so he's asked his attorney to look into drafting a doc for he [sic] and I that protects his interest in the property.

[Doc. 1 at ¶ 82; Doc. 12 at ¶ 82; Doc. 14 at ¶ 43; Doc. 15 at ¶ 18; Doc. 15-5 at 67–68].

53.     On June 10, 2023, the following equity and collateral information was relayed to Mr. Brubaker by Grant Brunner during a telephone call:  (1) Grant Brunner admitted that there was never any equity in his home, the Berthoud Property, to cover the

loan; and (2) the Thorton investment property was closing on June 20, 2023.  [Doc. 14 at ¶ 44; Doc. 15 at ¶ 19; Doc. 15-5 at 1–2].

54.     On June 16, 2023, Mr. Brubaker asked if the Thorton investment property was still scheduled for closing on June 20, 2023.  [Doc. 1 at ¶ 90; Doc. 12 at ¶ 90; Doc. 14 at ¶ 45; Doc. 15 at ¶ 18; Doc. 15-5 at 72–73].

55.     In response, Grant Brunner represented the following to Mr. Brubaker: "Yep, it's one of the Aurora prop's [sic] but it is."  [Doc. 1 at ¶ 90; Doc. 12 at ¶ 90; Doc. 14 at ¶ 45; Doc. 15 at ¶ 18; Doc. 15-5 at 72–73].

56.     On June 20, 2023, Grant Brunner represented the following to Mr. Brubaker: "Hey[,] just letting you know it didn't get done this afternoon.  But there's only one condition that needs to be signed off on and the lender just told us that will happen this week."  [Doc. 1 at ¶ 91; Doc. 12 at ¶ 91; Doc. 14 at ¶ 46; Doc. 15 at ¶ 18; Doc. 15-5 at 73].

57.     On July 19, 2023, Grant Brunner represented the following to Mr. Brubaker: "FYI that we're going to know on this tomorrow[,] Mike.  Our buyer paid down more of his balance on Monday so underwriting will have it today."  [Doc. 1 at ¶ 93; Doc. 12 at ¶ 93; Doc. 14 at ¶ 47; Doc. 15 at ¶ 18; Doc. 15-5 at 74].

58.     On July 31, 2023, Mr. Brubaker explained to Grant Brunner how violated he felt with the "whole deal" and asked why the equity in another investment property was not being used to repay him.  [Doc. 1 at ¶ 97; Doc. 12 at ¶ 97; Doc. 14 at ¶ 48; Doc. 15 at ¶ 18; Doc. 15-5 at 77].

59.     On August 2, 2023, Grant Brunner responded and represented the following to Mr. Brubaker:  "I wanted to get confirmation before responding but we have a closing

15

scheduled for Monday at 1pm.  I know there's nothing that can be said at this point we just have to get you paid back.  So I will be in touch then."  [Doc. 1 at ¶ 97; Doc. 12 at ¶ 97; Doc. 14 at ¶ 48; Doc. 15 at ¶ 18; Doc. 15-5 at 78].

60.     On August 7, 2023, Mr. Brubaker asked which property was allegedly closing that day.  [Doc. 1 at ¶ 99; Doc. 12 at ¶ 99; Doc. 14 at ¶ 49; Doc. 15 at ¶ 18; Doc. 15-5 at 79].

61.     In response, Grant Brunner represented the following to Mr. Brubaker:  "It's our Thorton house for $735K."  [Doc. 1 at ¶ 99; Doc. 12 at ¶ 99; Doc. 14 at ¶ 49; Doc. 15 at ¶ 18; Doc. 15-5 at 79].

62.     SRE Capital required funds from other investors to be able to pay its contractual obligations to Mr. Brubaker.  [Doc. 14 at ¶ 50; Doc. 15 at ¶¶ 18, 21].

63.     The above representations made by SRE Capital (via Grant Brunner) to Mr. Brubaker were false and intended to induce Mr. Brubaker into entering additional promissory notes and to induce Mr. Brubaker not to take action to enforce his rights under the Notes, Guaranty, and Deed of Trust.  [Doc. 14 at ¶ 50; Doc. 15 at ¶¶ 18, 21].

64.     By correspondence dated September 5, 2023, Mr. Brubaker demanded full payment under the Notes and Guaranty.  [Doc. 1 at ¶ 102; Doc. 12 at ¶ 102; Doc. 14 at ¶ 51].

65.     Defendant SRE Capital has failed to make payment under the Notes.  [Doc. 1 at ¶ 103; Doc. 12 at ¶ 103; Doc. 14 at ¶ 51; Doc. 15 at ¶ 20].

## ANALYSIS

Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, *see* [Doc. 1 at ¶ 5], the Court applies the substantive law of the forum state,

*Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Plaintiff does not expressly engage in a choice-of-law analysis in his briefing or direct the Court to a choice-of-law provision in the Promissory Notes, but Plaintiff proceeds as if Colorado law applies. *See* [Doc. 14 at 13–14 (citing cases applying Colorado law to breach of contract claim); *id.* at 17, 22–23 (citing cases applying Colorado law to fraudulent misrepresentation claim)]. The Court thus assumes that Colorado law applies here. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

## I.      Claims Asserted Against the Brunner Defendants (Counts II and III)

As a preliminary matter, the Court notes that the instant Motion seeks summary judgment against both SRE Capital and the Brunners. As set forth above, this Court previously granted Plaintiff's Motion to Dismiss the Brunners, thereby dismissing Plaintiff's claims against the Brunners without prejudice. [Doc. 39]. Accordingly, insofar as the instant Motion seeks summary judgment for Plaintiff and against the Brunners, the Motion is **DENIED as moot.**

## II.      Claims Asserted Against SRE Capital (Counts I and III)

Plaintiff asserts two causes of action against SRE Capital: Count I for breach of contract and Count III for fraudulent misrepresentation. The Court first considers whether Plaintiff has met his burden as to SRE Capital's liability for each claim. Then, the Court considers whether Plaintiff is entitled to his attorney's fees under the terms of the Notes. Finally, because Plaintiff seeks identical damages under both Count I and Count III, the Court considers whether Plaintiff has met his burden with respect to damages.

A.     **Breach of Contract**

In his first claim for relief, Plaintiff alleges breach of contract against SRE Capital for breach of the Notes.  Plaintiff argues that SRE Capital breached the Notes by failing to make payments when due thereunder and as of the date of the Motion.  Under Colorado law, a breach of contract claim requires the plaintiff to establish (1) the existence of a contract, (2) performance by the plaintiff or justification for nonperformance, (3) failure to perform by defendant, and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Plaintiff has identified evidence establishing that SRE Capital breached its obligations under the Notes.  First, Plaintiff has provided the Court with evidence of the Notes.  [UMF ¶¶ 4–7, 10, 12–15, 17–19, 21; Doc. 15-1; Doc. 15-3; Doc. 15-4].  According to the terms of the Notes, Mr. Brubaker loaned $200,000 to SRE Capital in exchange for repayment plus accrued interest by dates certain.  [UMF ¶¶ 4, 6, 14–15, 18, 21].  The Notes also provided for a late charge of five percent on any payment not received by Mr. Brubaker, [*id.* at ¶¶ 5, 13, 19], and SRE Capital's debt to Mr. Brubaker was secured by deeds of trust in either the Rocky Heights Property (the First Promissory Note) or the Berthoud Property (the Second and Third Promissory Notes), [*id.* at ¶¶ 7, 14; Doc. 15-1; Doc. 15-3; Doc. 15-4].  The Third and Final Promissory Note accrued interest at a rate of thirty-two and one-half percent (32.5%), stated as $265,000 in the Note, and was secured by a deed of trust for the Berthoud Property, dated June 27, 2022, and guaranteed by the Guaranty.  [UMF ¶ 18].  Plaintiff also provided the Court with evidence that he provided the principal amount of $200,000 to SRE Capital on May 26, 2022, and that the Second and Third Promissory Notes were extensions of the First Promissory Note.  [*Id.* at ¶¶ 4,

12, 13, 19].  Plaintiff has thus established the existence of a contract and his performance thereof.

Plaintiff provided evidence that the Third and Final Promissory Note became due, by its terms, on June 15, 2023, in the amount of $265,000 plus interest at the rate of 32.5%, subject to a late charge of five percent on any payment not received by Mr. Brubaker.  [*id.* at ¶¶ 17–21].  Plaintiff also provided evidence that SRE Capital failed to timely pay the Notes, [*id.* at ¶¶ 11, 16, 22–23], and that SRE Capital's failure to pay the amount due under the Third and Final Promissory Note remains ongoing, [*id.* at ¶¶ 22–23, 65].  Thus, Plaintiff has established that SRE Capital failed to perform its obligations under the Notes, which caused Plaintiff harm.  *See* [*id.* at ¶¶ 35, 38, 45, 58, 65].  Plaintiff has therefore established that SRE Capital breached its obligations under the Notes.

Accordingly, Plaintiff's Motion for Summary Judgment as to Count I is **GRANTED.** *See Mighty Argo Cable Car, LLC v. Trivecta Cap. Grp., Inc.*, No. 21-cv-01106-RMR-NRN, 2022 WL 4549677, at *2, *5 (D. Colo. Aug. 30, 2022) (granting summary judgment for plaintiff on breach of contract claim).

## B.    Fraudulent Misrepresentation

Plaintiff seeks summary judgment as to Count III for fraudulent misrepresentation as asserted against SRE Capital.[3]  Plaintiff alleges that "Defendants made [numerous] false representation[s] knowing that doing so would prevent Plaintiff from demanding the

---

[3] Absent any argument to the contrary, the Court is satisfied that Plaintiff's claims are not barred by the economic loss doctrine.  *See Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1159 (Colo. 2019) (clarifying that the economic loss doctrine does not bar claims for losses caused by intentional torts).

property as collateral and otherwise exercising his rights under the Notes [and] Deed of Trust."  [Doc. 1 at ¶ 130].

To establish fraud in Colorado based on a misrepresentation, the plaintiff must show (1) the defendant made a false representation of a material fact; (2) the defendant knew the representation was false; (3) the plaintiff was ignorant of the falsity; (4) the defendant made the representation with the intention that it be acted upon; and (5) the plaintiff actually and reasonably relied on the representation, causing damages.  *In re Bloom*, 634 B.R. 559, 581 (10th Cir. BAP (Colo.) 2021) (citing *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013)), *aff'd*, No. 22-1005, 2022 WL 2679049 (10th Cir. July 12, 2022).

Here, Plaintiff provides evidence of numerous representations of fact made by SRE Capital through one of its two members, Grant Brunner.  For example, Grant Brunner informed Mr. Brubaker that the funds Mr. Brubaker loaned to SRE Capital would be used by SRE Capital to invest in the Rocky Heights Property, and that a Deed of Trust granting Mr. Brubaker rights in the Rocky Heights Property would be recorded.  [UMF ¶¶ 7–9].

Plaintiff also provides evidence that SRE Capital knew that the foregoing representations were false.  *See, e.g.*, [*id. at* ¶¶ 8–9, 14, 16, 25–27, 41–42, 53, 62–63].  The Deed of Trust for the Rocky Heights Property was never recorded.  [*Id.* at ¶ 8].  Indeed, among other things, Plaintiff provides evidence that Grant Brunner surreptitiously changed the address of the Deed of Trust in the First Promissory Note from the Rocky Heights Property to his own home address, the Berthoud Property, without Mr. Brubaker's informed consent.  [*Id.* at ¶¶ 41–42]; *see also United States v. Bailey,* 327 F.3d 1131, 1140 (10th Cir. 2003) (intent to defraud may be inferred from misrepresentations,

attempts to conceal activity, and conversion of money for the defendant's own use);
*United States v. Sivigliano*, 550 F. App'x 537, 539 (10th Cir. 2013) (finding that the "jury
could easily infer an intent to defraud investors" where defendant told investors their
money would be used only to purchase properties pursuant to investment program but,
in fact, defendant used the investors' money for other purposes, "including simply
covering returns owed to other investors").  Plaintiff's reasonable reliance on the
misrepresentations is supported by evidence of communications between Plaintiff and
Grant Brunner, wherein the latter held SRE Capital and its members out as "experienced
professionals in the real estate industry," [Doc. 14 at 22], and evidence regarding
Plaintiff's personal relationship and friendship with SRE Capital's principals, Grant and
Gregory Brunner, [*id.*]; *see also* [Doc. 15 at ¶ 18; Doc. 15-5].  Finally, Plaintiff establishes
that, in reliance on SRE Capital's misrepresentations, he delayed exercising his rights
under the Notes and Deed of Trust.  [UMF ¶¶ 12, 20, 24–27, 29–49, 54–61].

Upon review of the evidence provided by Plaintiff, the Court concludes that Plaintiff
has established that SRE Capital fraudulently misrepresented material facts designed to
prevent Plaintiff from demanding the property as collateral and exercising Plaintiff's rights
under the Notes and the Deed of Trust.  There are no disputes as to any material facts,
and Plaintiff is entitled to judgment on this issue as a matter of law.  For these reasons,
Plaintiff's Motion for Summary Judgment on Count III as asserted against SRE Capital
is **GRANTED**.

### C.    Attorney's Fees

Plaintiff also seeks to recover attorney's fees.  [Doc. 14 at 15, 23–24].  Plaintiff has
provided evidence that he is entitled to recover attorney's fees pursuant to the terms of

the Notes.  *See* [Doc. 15 at ¶¶ 2, 11, 14; Doc. 15-1; Doc. 15-3; Doc. 15-4].  All three Notes

include the following language:

> Should this Note not be paid according to its terms, and suit is filed, or any
> attorney employed, or expense incurred to compel payment, [SRE Capital]
> agrees to pay all such expenses and a reasonable sum as attorney's fees.
> [SRE Capital] acknowledges that [it] has read this Promissory Note and fully
> understands its obligations and responsibilities hereunder.

[Doc. 15-1 at 1; Doc. 15-3 at 1; Doc. 15-4 at 1].  Plaintiff has also provided some evidence

that he incurred legal fees in the amount of $25,115.49 in seeking to compel payment

due under the Notes.  [Doc. 14-1 at ¶ 10; Doc. 15 at ¶¶ 2, 11, 14].  However, the record

before the Court does not satisfy the requirements for motions for attorney's fees as set

forth in Local Civil Rule 54.3, D.C.COLO.LCivR 54.3, and provides the Court insufficient

information to determine whether the attorney's fees claimed were necessary and

reasonable.  Thus, in order to determine the amount of attorney's fees to award as

damages, Plaintiff shall file a motion for attorney's fees with information that complies with

Local Civil Rule 54.3 no later than September 27, 2024.

>     **D.    Damages**

Finally, the Court must determine damages.  Plaintiff seeks $318,287.91, plus

accrued interest, in damages against SRE Capital for his breach of contract claim.  [Doc.

14 at 23 ¶ (a)].  While Mr. Brubaker seeks the same amount as damages against SRE

Capital for his fraudulent misrepresentation claim, *see* [*id.* at 23], Plaintiff concludes the

Motion by requesting that the Court find he is entitled to judgment as a matter of law

against SRE Capital for (1) "[t]he amounts due and owing by SRE Capital under the

Notes, in an amount totaling . . . $318,287.91 and accruing," [*id.* at ¶ (a)]; (2) attorney's

fees "pursuant to the terms of . . . the Notes in the amount of $25,115.49," [*id.* at 24 ¶ (c)];

and (3) a "[f]raudulent misrepresentation judgment," [*id.* at 24 ¶ (d)].  In other words, to

the extent the Court awards damages on Plaintiff's breach of contract claim against SRE Capital, Plaintiff does not seek separate damages for fraudulent misrepresentation.

Because the Court finds that summary judgment is appropriate on Counts I and III against SRE Capital, it finds that the damages requested are appropriate. However, as discussed above, this Court cannot currently determine whether the requested attorney's fees are necessary and reasonable. Thus, Plaintiff's request for damages for SRE Capital's breach of the Notes is **GRANTED**. *See Mighty Argo Cable Car, LLC*, 2022 WL 4549677, at *5 (granting summary judgment for plaintiff on damages for breach of contract and fraudulent concealment claims). However, the Court will defer entering an order as to the award of attorney's fees until the Court determines the amount of attorney's fees to award.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)     Plaintiff's Motion for Summary Judgment [Doc. 14] is **GRANTED in part** and **DENIED as moot in part**, as set forth in this Order;

(2)     Final judgment **SHALL ENTER** in favor of Plaintiff Michael Brubaker and against Defendant SRE Capital, LLC in the amount of **$318,287.91** plus pre-judgment interest that has accrued at the applicable rate;

(3)     Plaintiff is entitled to an award of reasonable attorney's fees;

(4)     **No later than October 14, 2024**, Plaintiff shall file a motion for attorney's fees compliant with D.C.COLO.LCivR 54.3.; and

(5)     The Clerk of Court is directed to close this case.

DATED:  September 23, 2024                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge